UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

KALLIOPE AMORPHOUS,

                             Plaintiff,

             v.

FLIPBOARD, INC.,

                         Defendant.

------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: April 26, 2016
>
> 15 Civ. 5802 (KPF)
>
> OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On July 27, 2015, Plaintiff Kalliope Amorphous initiated the instant action, alleging that Defendant Flipboard, Inc. had infringed several of Plaintiff's copyrights.  On October 16, 2015, Defendant filed the instant motion to transfer this case to the United States District Court for the Northern District of California, where a related action — *Flipboard, Inc.* v. *Kalliope Amorphous, a/k/a Michelle Walsh*, No. 15 Civ. 3255 (BLF) — is currently pending.  For the following reasons, Defendant's motion is granted.

## BACKGROUND[1]

### A.   Factual Background

Plaintiff is a photographer who currently lives in Rhode Island.  (Compl. ¶ 11).  Plaintiff has posted some of her photographs online, using sites such as Bored Panda, Flickr, and Tumblr.  (*Id.* at ¶ 1).

---

[1]   The facts in this case are drawn from the parties' briefs and supporting materials, including the declaration of Brian Willen ("Willen Decl.") (Dkt. #29); the declaration of David Creemer ("Creemer Decl.") (Dkt. #30); the declaration of Chris Tobin ("Tobin Decl.") (Dkt. # 31); the declaration of Kalliope Amorphous ("Amorphous Decl.") (Dkt.

Defendant is a Delaware corporation with its principal place of business in Palo Alto, California.  (Creemer Decl. ¶ 2).  Defendant provides an online service that gathers content from various websites — including Bored Panda, Flickr, and Tumblr — and presents the content on a single webpage in a format that resembles a magazine.  (*Id.* at ¶¶ 3, 8, 11).

On June 3, 2015, Barbara Hoffman, Plaintiff's attorney, sent a letter to Defendant, alleging that: (i) Plaintiff owned copyrights for photographs that she posted on Bored Panda (the "Bored Panda photographs"); and (ii) Defendant had infringed those copyrights when it shared the Bored Panda photographs on its platform.  (*See* Willen Decl., Ex. A).  The letter stated, in relevant part, that "it would be simple enough for [Plaintiff] … to file suit against [Defendant] for copyright infringement and seek the maximum statutory damages … in the amount of $150,000 for each work infringed."  (*Id.*).  On June 10, 2015, Brian Willen, Defendant's attorney, responded to Ms. Hoffman's letter, explaining why he believed that Defendant had not violated any of Plaintiff's copyrights.  (*Id.*, Ex. B).

On June 15, 2015, Ms. Hoffman sent a follow-up email to Mr. Willen, asking to see copies of various documents.  (Willen Decl., Ex. C).  The email said that, once Defendant produced the requested documents, the parties

---

#38); and the declaration of Barbara Hoffman ("Hoffman Decl.") (Dkt. #39).  The Court has also considered the allegations in Plaintiff's Complaint ("Compl.") (Dkt. #1).

For the sake of brevity, the Court will refer to Defendant's opening brief as "Def. Br." (Dkt. #28); Plaintiff's response brief as "Pl. Br." (Dkt. #37); and Defendant's reply brief as "Def. Reply" (Dkt. #42).

"should plan to talk … to see how and if this matter can be resolved without litigation." (*Id.*).  Mr. Willen emailed Ms. Hoffman the relevant documents that day.  (*Id.*).  After seeing these documents, Ms. Hoffman explained that she still believed Plaintiff had a valid copyright claim, and suggested that the parties "try to resolve this by next week." (*Id.*).  Ms. Hoffman also stated: "If you feel the matter is at an end, unfortunately for both our clients our discussions will take place in the district court." (*Id.*).

On June 16, 2015, Ms. Hoffman sent another email to Mr. Willen, alleging that Defendant had infringed Plaintiff's copyrights when it allowed its users to view photographs that Plaintiff had posted on Flickr and Tumblr (the "Flickr and Tumblr photographs").  (*See* Willen Decl., Ex. D).  Ms. Hoffman insisted that Defendant's "blatant infringement" of Plaintiff's copyrights was "illegal, unparalleled, and unacceptable." (*Id.*).  Ms. Hoffman asked Defendant to "acknowledge this email and indicate whether you still think there is nothing to discuss.  If we do not hear from [Defendant] by Friday, we will take appropriate legal actions to deal with this illegal activity." (*Id.*).  Mr. Willen immediately responded to this email, explaining that "these latest accusations have no more merit than those you made previously about content on Bored Panda." (*Id.*).  However, Mr. Willen added that he had "no desire to fight with [Plaintiff] about these matters," and would "be happy to discuss any remaining concerns." (*Id.*).

On June 19, 2015, Ms. Hoffman sent Mr. Willen an email stating her position on various legal issues.  (*See* Willen Decl., Ex. E).  At the conclusion of

the email, Ms. Hoffman noted that she was "hopeful" that the parties could "arrive at a reasonable monetary settlement without litigation; however, if litigation is necessary, [Plaintiff] will prevail on summary judgment." (*Id.*).

On June 23, 2015, Ms. Hoffman and Mr. Willen discussed the parties' disagreement by phone. (*See* Willen Decl. ¶ 7). Mr. Willen avers that, during the call, he asked for information supporting Plaintiff's arguments, and Ms. Hoffman responded that "she might provide that information" or "she might just sue." (*Id.*). Ms. Hoffman says that she recalls this conversation differently, but has not explained her memory of the call. (Hoffman Decl. ¶ 7).

Between June 24, 2015, and July 8, 2015, Ms. Hoffman and Mr. Willen continued to trade emails. (Willen Decl., Ex. F-I). In one of these emails, Ms. Hoffman stated that Plaintiff was "willing to settle for one million dollars," but Mr. Willen rejected this monetary demand. (*See id.*, Ex. F-G).

On July 13, 2015, counsel participated in another telephone conference. (*See* Willen Decl. ¶ 12). Ms. Hoffman states that, during the call, it became clear that "[s]ettlement discussions were over," and she said that she would "[s]ee [Mr. Willen] in court." (Hoffman Decl. ¶ 12). Mr. Willen remembers this conversation somewhat differently. (*See* Willen Decl. ¶ 12). He says that, during the call, Ms. Hoffman threatened to take Defendant to court "*if* [Defendant] did not agree to her demands or make a monetary offer to settle the dispute." (*Id.* (emphasis added)). "Ms. Hoffman … did not set a deadline for responding to her demands, and did not state the venue in which she might sue." (*Id.*).

B.     **Procedural Background**

A few hours after the July 13 phone call, Defendant filed a declaratory

action in the Northern District of California (the "California litigation"),

captioned *Flipboard, Inc.* v. *Kalliope Amorphous, a/k/a Michelle Walsh*, No. 15

Civ. 3255 (BLF).  (*See* Willen Decl. ¶ 15).  In the California litigation, Defendant

is seeking a declaration that it did not infringe Plaintiff's copyrights by making

Plaintiff's photographs available to its users.  (*Id.*, Ex. J).  Two weeks later,

Plaintiff initiated the action before this Court (the "New York litigation").  (*See*

Compl. at 26).

On September 21, 2015, Plaintiff filed a motion to dismiss the California

litigation for lack of personal jurisdiction.  (*See* Dkt. #44, Ex. A).[2]  Plaintiff's

motion was denied on December 10, 2015.  (*Id.*).  Plaintiff agreed not to seek an

interlocutory appeal of that decision.  (*See* Dkt. #46).

On October 16, 2015, Defendant filed the instant motion to transfer the

New York litigation to the Northern District of California.  (Dkt. #27).

### DISCUSSION

A.     **The First-Filed Rule**

The first-filed rule provides that, when litigants have filed two competing

actions in different judicial districts, their dispute should be resolved in the

district where the first suit was filed.  *See, e.g.*, *New York Marine & Gen. Ins.*

*Co.* v. *Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *D.H. Blair & Co.* v.

*Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).  The Second Circuit has

---

[2]        Unless otherwise indicated, citations to docket entries refer to this instant litigation.

recognized "only two exceptions to the first-filed rule." *Employers Ins. of Wausau* v. *Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). First, the rule is inapplicable where "special circumstances" suggest that the dispute should be litigated in the district where the second suit was filed. *Id.*; *see also, e.g., First City Nat. Bank & Trust Co.* v. *Simmons*, 878 F.2d 76, 79 (2d Cir. 1989). Second, the rule is inapplicable when the "balance of convenience" favors litigation in the district where the second-filed action is pending. *Employers Ins. of Wausau*, 522 F.3d at 275; *see also, e.g., Motion Picture Lab. Technicians Local 780, I.A.T.S.E.* v. *McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986). The party opposing application of the first-filed doctrine bears the burden of demonstrating that one of these exceptions is applicable. *See Reliance Ins. Co.* v. *Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001); *800-Flowers, Inc.* v. *Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994); *see also Employers Ins. of Wausau*, 522 F.3d 275 (explaining that the party opposing the application of the first-filed rule can "rebut[]" the presumption that the first-filed case has priority with "proof of the desirability of proceeding in the forum of the second-filed action").

**B.    The First-Filed Rule Suggests That the Parties' Dispute Should Be Resolved in the Northern District of California**

The California litigation is the first-filed action.[3]  Thus, the Northern District of California is the proper forum for this case unless Plaintiff has

---

[3]    This Court does not accept Plaintiff's suggestion that the "first-filed" action might be the first action in which the complaint was properly served. A majority of courts in this District have rejected this interpretation of the first-filed rule. *See, e.g., Holiday Image LLC* v. *Victoria's Secret Stores Brand Mgmt., Inc.*, No. 14 Civ. 8660 (JMF), 2015 WL

demonstrated that there are "special circumstances" at play, or that the "balance of convenience" favors litigation in New York.  *Employers Ins. of Wausau*, 522 F.3d at 275.  Plaintiff has not made either showing.

### 1.     There Are No "Special Circumstances" Here

Plaintiff contends that there is a "special circumstance[]" at play in this case: the California litigation is an "improper anticipatory declaratory judgment action." (Pl. Br. 7 (quoting *Employers Ins. of Wausau*, 522 F.3d at 275)).  It is true that a court may depart from the first-filed rule if a first-filed case is an "anticipatory action" — i.e., an action designed to beat the other party in a race to the courthouse.  *Employers Ins. of Wausau*, 522 F.3d at 275.  "[I]n order for a declaratory judgment action to be anticipatory," however, "it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action."  *Id.* at 176.  Crucially, Plaintiff has not demonstrated that the California litigation was filed in response to a threat of litigation that contained "specific warnings as to deadlines and subsequent legal action."  *Employers Ins. of Wausau*, 522 F.3d at 276.  Rather, the evidence suggests that Plaintiff and Defendant spent weeks attempting to resolve their dispute without judicial intervention, and during the last discussion between

---

366931, at *2 (S.D.N.Y. Jan. 28, 2015) (collecting cases); *Interwood Mktg. Ltd.* v. *Media Arts Int'l, Ltd.*, No. 90 Civ. 4690 (LBS), 1990 WL 209432, at *3 (S.D.N.Y. Dec. 12, 1990) (same). Moreover, the Court does not believe that it would be equitable to apply Plaintiff's interpretation of the first-filed rule to these facts. While it is true that the complaint in the New York litigation was served first, this is only because Plaintiff successfully evaded service. (Willen Decl. ¶¶ 18-26).  *See Masluf Realty Corp.* v. *Markel Ins. Corp.*, No. 13 Civ. 3031 (DLI)(JMA), 2014 WL 1278102, at *4 (E.D.N.Y. Mar. 27, 2014) ("It would be unjust to permit Plaintiff ... to benefit from the 'first-filed' rule where, but for [Plaintiff's] success in resisting the effectuation of service, Defendant ... might have effected service in the [other] [a]ction some time ago.").

Plaintiff's counsel and defense counsel, Plaintiff's counsel made a vague threat to sue at an indefinite point in the future.  (*See* Hoffman Decl. ¶ 12 (Ms. Hoffman remarking that she would "[s]ee [Mr. Willen] in court"); Willen Decl. ¶ 12 ("Ms. Hoffman provided no indication that any … lawsuit would be filed imminently, if ever, did not set a deadline for responding to her demands, and did not state the venue in which she might sue.")).[4]  Thus, Plaintiff has not shown that special circumstances counsel in favor of litigating the parties' dispute in New York.

### 2.    The "Balance of Convenience" Does Not Favor Litigation in New York

Alternatively, Plaintiff argues, the "balance of convenience" suggests that this dispute should be litigated in New York.  (Pl. Br. 15).  The "factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)."  *Employers Ins. of Wausau*, 522 F.3d at 275 (quoting *Everest Capital Ltd.* v. *Everest Funds Mgmt., L.L.C.,* 178 F. Supp. 2d 459, 465 (S.D.N.Y. 2002)); *accord New York Marine & Gen. Ins. Co.,* 599 F.3d at 112.  These factors include:

> [i] the plaintiff's choice of forum, [ii] the convenience of witnesses, [iii] the location of relevant documents and relative ease of access to sources of proof, [iv] the convenience of the parties, [v] the locus of operative

---

[4]    It is true that, on Tuesday, June 16, 2015, Ms. Hoffman told Mr. Willen: "If we do not hear from [Defendant] by Friday, we will take appropriate legal actions to deal with this illegal activity.  (*See* Willen Decl., Ex. D).  But Mr. Willen responded to Ms. Hoffman well before the Friday deadline, thereby ameliorating the threat of litigation.  (*Id.*).  Thus, this Court cannot say that the California litigation was filed in response to Ms. Hoffman's June 16 statements.

facts, [vi] the availability of process to compel the attendance of unwilling witnesses, [and] [vii] the relative means of the parties.

*Employers Ins. of Wausau*, 522 F.3d at 275; *accord D.H. Blair & Co.*, 462 F.3d at 106-07.  As the Court balances these factors, it must be mindful that there is a "strong presumption" in favor of resolving the parties' dispute in the Northern District of California, where the first action was filed.  *800-Flowers, Inc.*, 860 F. Supp. at 135.  Ultimately, the Court concludes that Plaintiff cannot overcome this presumption.

### a.    Plaintiff's Choice of Forum

Ordinarily, the plaintiff's choice of forum is entitled to "significant weight."  *800-Flowers, Inc.*, 860 F. Supp. at 135.  However, the weight "accorded to the plaintiff's choice of forum is diminished substantially where [the] plaintiff has chosen a forum which is neither his [or her] home nor the place where the cause of action arose."  *Id.*  Here, Plaintiff has chosen to litigate in New York, despite the fact that she lives and works in Rhode Island (Compl. ¶ 11), and she is suing a California-based company for copyright infringement (Creemer Decl. ¶ 2).  As a result, this Court will accord only some weight to Plaintiff's preference for litigating this case in New York.

### b.    Convenience of Witnesses

Defendant has given the Court a list of its key witnesses, all of whom are located in or near the Northern District of California.  (*See* Willen Decl. ¶¶ 27-29).  In response, Plaintiff says that she might call some of Defendant's New York employees as rebuttal witnesses.  (S*ee* Pl. Br. 22; Amorphous Decl. ¶ 21).

However, Defendant — who is in a much better position to understand its own corporate structure — has represented to the Court that all of the key decisions at issue in this case were made by employees in California.  (*See* Def. Br. 3; Tobin Decl. ¶ 6).  In addition, Plaintiff says she will call "Tumblr, Flickr, Bored [P]anda, and Shot employees in New York City" as witnesses (*see* Pl. Br. 22), but she does not identify who these witnesses are (*see* Pl. Br. 22; *see generally* Amorphous Decl.), and as Plaintiff herself acknowledges, a party making an argument "based on the availability of witnesses must provide the Court with a specific list of probable witnesses who will be inconvenienced" by the proceedings in a particular forum.  (Pl. Br. 22-23).  As a result, the convenience of the witnesses suggests that this dispute should be heard in California.

### c.    Location of Relevant Documents and Other Evidence

The location of the documents and other relevant evidence in this case is neutral.  "[M]odern technologies such as photocopying and faxing permit any documents … to be transported to [or from] New York with presumably minimal difficulty."  *Herbert Ltd. P'ship* v. *Elec. Arts Inc.*, 325 F. Supp. 2d 282, 289 (S.D.N.Y. 2004).  Consequently, the Court will not give much weight to this factor.

### d.    Convenience of the Parties

Litigating this case in California will be much more convenient for Defendant because it has its headquarters in California, and the employees with knowledge relevant to this case are located in California.  (See Def. Br. 3; Tobin Decl. ¶ 6).  By contrast, litigating this case in New York will be more

convenient for Plaintiff because it is closer to her home in Rhode Island, and she would have to switch attorneys or proceed *pro se* if the litigation proceeds in California.  (*See generally* Amorphous Decl.).  Thus, the Court considers this to be a neutral factor.

### e.   Locus of Operative Facts

The locus of operative facts in this case is the Northern District of California.  All of the relevant, potentially infringing decisions — including decisions related to the design and operation of Defendant's product — were made in Palo Alto, California.  (*See* Def. Br. 3; Tobin Decl. ¶ 6).  *See AEC One Stop Grp., Inc.* v. *CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 530 (S.D.N.Y. 2004) ("The operative facts in infringement cases usually relate to the design, development and production of an infringing product.").  As a result, it would make sense for the parties to litigate their dispute in California.

### f.   Availability of Process to Compel Witnesses

Flipboard has identified at least one key witness — a former employee — who is within the subpoena power of the Northern District of California but outside the subpoena power of this Court.  (Def. Br. 21).  This factor counsels in favor of transferring this case to the Northern District of California. *See Billing* v. *Commerce One, Inc.*, 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) ("The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." (internal quotation marks omitted)).

11

### g.    Relative Means of the Parties

While the Court is sensitive to the fact that litigation in the Northern District of California would be more financially burdensome for Plaintiff, this factor is not dispositive in the Court's analysis, in light of the quality and quantity of the other factors that favor transfer.

### h.    Balancing

Taking all the relevant factors into consideration, the Court believes that the parties should litigate their dispute in the Northern District of California. The key decisions were made in California; key witnesses are located in California; and Plaintiff is not asking to litigate in her home state. As a result, Plaintiff cannot overcome the presumption that this case should proceed in California, where the first complaint was filed. *See Employers Ins. of Wausau*, 522 F.3d at 275.

### CONCLUSION

For the foregoing reasons, Defendant's motion to transfer is granted. The Clerk of Court is ORDERED to transfer this case to the United States District Court for the Northern District of California. The Clerk of Court is further ordered to terminate docket entry 27.

SO ORDERED.

Dated:      April 26, 2016
            New York, New York

_____
         KATHERINE POLK FAILLA
         United States District Judge